**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GUIDO VALLEJO*, on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

               Plaintiff,

               v.

DL RESTAURANT DEVELOPMENT LLC
     d/b/a SCALINI FEDELI,
JESUS SAVES, INC.
     d/b/a SCALINI FEDELI,
SCALA 4 LLC
     d/b/a LOCANDA VECCHIA,
SCALINI 3 LLC
     d/b/a LOCANDA VECCHIA,
FIDUCIA, INC.
     d/b/a IL MONDO VECCHIO,
SCAL, LLC
     d/b/a IL MONDO VECCHIO,
MMA RESTAURANTS, INC.
     d/b/a PORTO LEGGERO,
AP RESTAURANT I LLC
     d/b/a STELLA MARINA BAR &
          RESTAURANT,
LONG BRANCH HOLDING, INC.
     d/b/a SIRENA RISTORANTE,
SIRENA, LLC
     d/b/a SIRENA RISTORANTE,
JOHN DOE CORPORATIONS 1-4
     d/b/a SCALA DEL NONNA
     d/b/a CUBACAN,
JOSEPH CETRULO, and
MICHAEL CETRULO,

               Defendants.

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff GUIDO VALLEJO ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorney, hereby files this Class and Collective Action Complaint against Defendants DL RESTAURANT DEVELOPMENT LLC d/b/a SCALINI FEDELI, JESUS SAVES, INC. d/b/a SCALINI FEDELI, SCALA 4 LLC d/b/a LOCANDA VECCHIA, SCALINI 3 LLC d/b/a LOCANDA VECCHIA, FIDUCIA, INC. d/b/a IL MONDO VECCHIO, SCAL, LLC d/b/a IL MONDO VECCHIO, MMA RESTAURANTS, INC. d/b/a PORTO LEGGERO, AP RESTAURANT I LLC d/b/a STELLA MARINA BAR & RESTAURANT, LONG BRANCH HOLDING, INC. d/b/a SIRENA RISTORANTE, SIRENA, LLC d/b/a SIRENA RISTORANTE, JOHN DOE CORPORATIONS 1-4 d/b/a SCALA DEL NONNA d/b/a CUBACAN (collectively the "Corporate Defendants"), JOSEPH CETRULO and MICHAEL CETRULO ("Individual Defendants," and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages, including overtime, due to improper rounding, (3) unpaid wages, including overtime, due to invalid tip credits, (4) illegally retained gratuities, (5) gratuities improperly distributed to invalid tip pool members, (6) liquidated damages, and (7) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages, including overtime, due to improper rounding, (3) unpaid wages, including overtime, due to invalid tip credits, (4) illegally retained gratuities, (5)

2

gratuities improperly distributed to invalid tip pool members, (6) unpaid call-in premiums, (7) statutory penalties, (8) liquidated damages, and (9) attorneys' fees and costs.

3.      Plaintiff and potential class members were all victims of Defendants' scheme to underpay employees. Defendants (i) impermissibly induced policies of timeshaving and improper rounding by requiring employees to handwrite their clock in and clock out times rounded to the nearest hour, (ii) failed to satisfy the requirements to claim a valid tip credit, where applicable, (iii) included non-tipped employees, such as managers, in the tip pool, thereby taking rightfully earned tips away from actual tipped employees, (iv) directly retained gratuities from tipped employees, and (v) failed to compensate call-in premiums to employees who were immediately sent home upon arrival to work. Plaintiff brings this wage and hour class action on behalf of himself and all persons, who during the applicable limitations period up to and including the present, were similarly underpaid by Defendants in violation of protections afforded under the FLSA, parties' contracts, laws of equity, and the laws and regulations passed in the State of New Jersey, the New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.* ("NJWPL"), and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq* ("NJWHL").

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337, and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.      Plaintiff GUIDO VALLEJO is a resident of Queens County, New York.

7.      Individual Defendants MICHAEL CETRULO and JOSEPH CETRULO are brothers. Defendants collectively own and operate nine (9) fine-dining restaurants, one (1) in New York County, New York and eight (8) throughout New Jersey, located at:

a)  Scalini Fedeli - 165 Duane St, New York, NY 10013;

b)  Scalini Fedeli - 63 Main St, Chatham, NJ 07928;

c)  Locanda Vecchia - 167 Main Rd, Montville, NJ 07045;

d)  Il Mondo Vecchio - 72 Main St #1, Madison, NJ 07940;

e)  Porto Leggero - 185 Hudson St, Jersey City, NJ 07311;

f)  Scala del Nonna - 32 Church St, Montclair, NJ 07042;

g)  Stella Marina Bar & Restaurant - 800 Ocean Ave N, Asbury Park, NJ 07712;

h)  Sirena Ristorante - 27 Ocean Ave N, Long Branch, NJ 07740; and

i)  Cubacan (**Closed**) - 800 Ocean Ave N, Asbury Park, NJ 07712.

(collectively, the "Restaurants")

8.      Defendants operate the Restaurants as a single integrated enterprise under the common control of Defendants. All the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

a)  Individual Defendant MICHAEL CETRULO owns, either wholly or partially, and operates, all the Restaurants. Individual Defendant MICHAEL CETRULO appears as owner, co-owner, principal, and/or operator on registrations, licenses, public reports, the Restaurants' websites and social media pages, and news articles:

i.  The New York Times published four (4) articles referencing Individual Defendant MICHAEL CETRULO's ownership of the various Restaurants:

(1) "Cuban Flavors on the Boardwalk" – This article identifies Individual Defendant MICHAEL CETRULO as owner of Stella Marina Bar & Restaurant, Cubacan, both Scalini Fedeli locations, and Il Mondo Vecchio. *See* **Exhibit A**.

(2) "A City Kid" - This article identifies Individual Defendant MICHAEL CETRULO as owner of Porto Leggero and Scalini Fedeli. *See* **Exhibit B**.

(3) "A Boardwalk Bet That's a Lock" – This article identifies Individual Defendant MICHAEL CETRULO as owner of Sirena Ristorante and both Scalini Fedeli locations. *See* **Exhibit C**.

(4) "A Fitting Complement to Sea and Sky" – This article identifies Individual Defendant MICHAEL CETRULO as owner of Stella Marina Bar & Restaurant, Il Mondo Vecchio, Sirena Ristorante, and both Scalini Fedeli locations. *See* **Exhibit D**.

ii.   Individual Defendant MICHAEL CETRULO appears as an owner of Sirena Ristorante on its liquor license, along with Individual Defendant JOSEPH CETRULO. *See* **Exhibit E**.

iii.  The "About Us" pages from Defendants' websites for the Restaurants Scalini Fedeli, Locanda Vecchia, Il Mondo Vecchio, and Scala del Nonna (https://scalinifedeli.com/new-york/about/,

https://scalinifedeli.com/chatham/about/,

https://locandavecchia.com/about/,

https://www.ilmondovecchio.com/about/,                    and

https://www.scaladelnonna.com/about, identifies Individual Defendant MICHAEL CETRULO as the owner of each Restaurant. *See* **Exhibit F**.

iv.  Individual Defendant MICHAEL CETRULO is openly advertised and admitted by Defendants to be the owner on Defendants' Restaurants' Instagram and Facebook pages. *See* **Exhibit G**. Specifically:

(1)  On Defendants' Instagram page for Defendants' Il Mondo Vecchio, Defendants posted a story with a screenshot of an article which names Individual Defendant MICHAEL CETRULO as the owner of Il Mondo Vecchio and Scalini Fedeli. *Id.*

(2)  On Defendants' Instagram page for Defendants' Scala del Nonna, Defendants posted a video which admits and advertises that Individual Defendant MICHAEL CETRULO is the creator of Scala del Nonna's recipes. *Id.*

(3)  Defendants' Instagram page for Defendants' Scalini Fedeli advertises both Scalini Fedeli locations in New York and New Jersey. Defendants further admit and advertise that Individual Defendant MICHAEL CETRULO is the owner of both Scalini Fedeli locations in the biography section. *Id.*

(4)  Defendants' Facebook page for Defendants' Scalini Fedeli advertises both Scalini Fedeli locations in New York and New Jersey. Defendants further admit and advertise that Individual Defendant MICHAEL CETRULO is the owner of both Scalini

Fedeli locations in a Facebook post and in the page's biography section. *Id.*

b) Individual Defendant JOSEPH CETRULO owns, either wholly or partially, and operates, all the Restaurants. Individual Defendant JOSEPH CETRULO appears as owner, co-owner, principal, and/or operator on registrations, licenses, public reports, the Restaurants' websites, and news articles:

   i. The New York Times published three (3) articles referencing Individual Defendant JOSEPH CETRULO's ownership of the various Restaurants:

      (1) "Cuban Flavors on the Boardwalk" – This article identifies Individual Defendant JOSEPH CETRULO as owner of Stella Marina Bar & Restaurant, Cubacan, both Scalini Fedeli locations, and Il Mondo Vecchio. *See* **Exhibit A**.

      (2) "A Boardwalk Bet That's a Lock" – This article identifies Individual Defendant MICHAEL CETRULO as owner of Sirena Ristorante. *See* **Exhibit C**.

      (3) "A Fitting Complement to Sea and Sky" – This article identifies Individual Defendant MICHAEL CETRULO as owner of Stella Marina Bar & Restaurant and Sirena Ristorante. *See* **Exhibit D**.

   ii. Individual Defendant JOSEPH CETRULO appears as an owner of Sirena Ristorante on its liquor license, along with Individual Defendant MICHAEL CETRULO. *See* **Exhibit E**.

   iii. The "About" page on Defendants' website for the Restaurant Sirena Ristorante (https://sirenaristorante.com/about/) identifies Individual

Defendant JOSEPH CETRULO as owner of Sirena Ristorante and Stella Marina Bar & Restaurant. *See* **Exhibit H**.

iv.  Individual Defendant JOSEPH CETRULO is openly advertised and admitted by Defendants to be the owner on some of Defendants' Restaurants' Instagram and Facebook pages. *See* **Exhibit I**. Specifically:

(1)  On Defendants' Instagram page for Defendants' Sirena Ristorante, Defendants posted a story with a screenshot of an article which names Individual Defendant JOSEPH CETRULO as the owner of Sirena Ristorante, Stella Marina Bar & Restaurant, and Cubacan. *Id.*

(2)  On Defendants' Instagram page for Defendants' Stella Marina Bar & Restaurant, Defendants posted a story with a screenshot of an article which names Individual Defendant JOSEPH CETRULO as the owner of Sirena Ristorante, Stella Marina Bar & Restaurant, and Cubacan; the same screenshot of the same article above. *Id.*

(3)  On Defendants' Instagram page for Defendants' Sirena Ristorante, Defendants posted two posts which (i) have images depicting Individual Defendant JOSEPH CETRULO and (ii) advertise and admit Individual Defendant JOSEPH CETRULO to be the owner of Sirena Ristorante. *Id.*

(4)  On Defendants' Instagram page for Defendants' Stella Marina Bar & Restaurant, Defendants posted one post and one story which both (i) have images depicting Individual Defendant JOSEPH CETRULO and (ii) advertise and admit Individual Defendant

JOSEPH CETRULO to be the owner of Stella Marina Bar & Restaurant. *Id.*

c)  All Corporate Defendants are owned by both or either of Individual Defendants MICHAEL CETRULO or JOSEPH CETRULO.

d)  On Defendants' Facebook page for Defendants' Stella Marina Bar & Restaurant, Defendants posted two posts which advertise and admit Sirena Ristorante and Cubacan to be sister restaurants of Stella Marina Bar & Restaurant. *See* **Exhibit J**.

e)  The homepages on Defendants' websites for the Restaurants Il Mondo Vecchio (https://www.ilmondovecchio.com/) and Scala del Nonna, (https://www.scaladelnonna.com/) contain images of the logos for Defendants Restaurants Scalini Fedeli (New York), Scalini Fedeli (Chatham), Scala del Nonna, and Porto Leggero,  that link directly to their individual websites when clicked.  *See* **Exhibit K**.

f)  The "Sister Locations" pages on Defendants' websites for the Restaurants Sirena Ristorante  (https://sirenaristorante.com/sister-locations/), Stella Marina Bar & Restaurant  (https://stellamarinarestaurant.com/sister-locations/),  and  Cubacan (https://cubacanrestaurant.com/sister-locations/) contain sections dedicated to each other, displaying the logos, images, descriptions, addresses, and phone numbers of each other, and have links directly to each of their individual websites.  *See* **Exhibit L**.

g)  All the Restaurants in New York and New Jersey, except Cubacan, share similar themes: high-end Italian fine-dining restaurants with Italian names, serving similar Italian menus at similarly  expensive prices, offering similar upscale tablecloth

dining service, containing extravagant interiors with Italian style architecture, and displaying Italian-themed art, which all culminate in each Restaurant providing similar Italian-themed ambience and dining experiences.

9.      Corporate Defendant DL RESTAURANT DEVELOPMENT LLC d/b/a SCALINI FEDELI is a foreign limited liability company organized under the laws of the State of Delaware and is authorized to transact business in the State of New York, with a principal place of business and address for service of process located at 165 Duane St, New York, NY 10013. Defendants own and operate "Scalini Fedeli" through Corporate Defendant DL RESTAURANT DEVELOPMENT LLC.

10.     Corporate Defendant JESUS SAVES, INC. d/b/a SCALINI FEDELI is a foreign limited liability company organized under the laws of the State of New Jersey, with a principal place of business at 63 Main Street, Chatham, NJ 07928. Defendants own and operate "Scalini Fedeli" through Corporate Defendant JESUS SAVES, INC.

11.     Corporate Defendant SCALA 4 LLC d/b/a LOCANDA VECCHIA is a foreign limited liability company organized under the laws of the State of New Jersey, with a principal place of business at 167 Main Road, Montville, NJ 07045. Defendants own and operate "Locanda Vecchia" through Corporate Defendant SCALA 4 LLC.

12.     Corporate Defendant SCALINI 3 LLC d/b/a LOCANDA VECCHIA is a foreign limited liability company organized under the laws of the State of New Jersey, with a principal place of business at 167 Main Road, Montville, NJ 07045. Defendants own and operate "Locanda Vecchia" through Corporate Defendants SCALINI 3 LLC and SCALA 4 LLC.

13.     Corporate Defendant FIDUCIA, INC. d/b/a IL MONDO VECCHIO is a foreign limited liability company organized under the laws of the State of New Jersey, with a principal

place of business at 72 Main Street, Madison, NJ 07940. Defendants own and operate "Il Mondo Vecchio" through Corporate Defendant FIDUCIA, INC.

14.     Corporate Defendant SCAL, LLC d/b/a IL MONDO VECCHIO is a foreign limited liability company organized under the laws of the State of New Jersey, with a principal place of business at 72 Main Street, Madison, NJ 07940. Defendants own and operate "Il Mondo Vecchio" through Corporate Defendants SCAL, LLC and FIDUCIA, INC.

15.     Corporate Defendant MMA RESTAURANTS, INC. d/b/a PORTO LEGGERO is a foreign limited liability company organized under the laws of the State of New Jersey, with a principal place of business at 185 Hudson St, Jersey City, NJ 07311. Defendants own and operate "Porto Leggero" through Corporate Defendant MMA RESTAURANTS, INC.

16.     Corporate Defendant AP RESTAURANT I LLC d/b/a STELLA MARINA BAR & RESTAURANT is a foreign limited liability company organized under the laws of the State of Delaware and is authorized to transact business in the State of New Jersey, with an address for service of process located at 1209 Orange Street, Wilmington, DE 19801 and a principal place of business at 800 Ocean Ave Asbury Park, New Jersey 07712. Defendants own and operate "Stella Marina Bar & Restaurant" through Corporate Defendant AP RESTAURANT I LLC.

17.     Corporate Defendant LONG BRANCH HOLDING, INC. d/b/a SIRENA RISTORANTE is a foreign limited liability company organized under the laws of the State of New Jersey, with a principal place of business at 27 Ocean Ave N, Long Branch, NJ 07740. Defendants own and operate "Sirena Ristorante" through Corporate Defendant LONG BRANCH HOLDING, INC.

18.     Corporate Defendant SIRENA, LLC d/b/a SIRENA RISTORANTE is a foreign limited liability company organized under the laws of the State of New Jersey, with a principal

place of business at 27 Ocean Ave N, Long Branch, NJ 07740. Defendants own and operate "Sirena Ristorante" through Corporate Defendants SIRENA, LLC and LONG BRANCH HOLDING, INC.

19.     Corporate Defendants JOHN DOE CORPORATIONS 1-4 are entities owned, wholly or partially, by both or either Individual Defendants MICHAEL CETRULO and JOSEPH CETRULO, which are used to own and operate Defendants' Restaurants "Scala del Nonna" and "Cubacan" on behalf of Individual Defendants MICHAEL CETRULO and JOSEPH CETRULO. Based on the fact that, to Plaintiff's knowledge, Defendants operate each Restaurant through one or two dedicated corporations, Plaintiff estimates that Defendants are also operating Scala del Nonna and Cubacan using one or two corporations dedicated to each. Therefore, Plaintiff names four (4) JOHN DOE CORPORATIONS.

20.     Individual Defendant MICHAEL CETRULO is a principal and owner of all Corporate Defendants. Defendant MICHAEL CETRULO exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. MICHAEL CETRULO exercises the power to, and delegates to managers and supervisors the power to, fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, MICHAEL CETRULO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. MICHAEL CETRULO exercised functional control over the business and financial operations of the Restaurants. MICHAEL CETRULO had the power and authority to supervise and control

supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

21.    Individual Defendant JOSEPH CETRULO is a principal and owner of all Corporate Defendants. Defendant JOSEPH CETRULO exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. JOSEPH CETRULO exercises the power to, and delegates to managers and supervisors the power to, fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, JOSEPH CETRULO would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. JOSEPH CETRULO exercised functional control over the business and financial operations of the Restaurants. JOSEPH CETRULO had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

22.    The Restaurants are all owned and operated by Individual Defendants MICHAEL CETRULO and JOSEPH CETRULO who regularly visit each Restaurant, including the one Plaintiff worked at, to personally oversee their operations. Because they share the same ownership and identical illegal wage and hour policies, the Restaurants and the relevant Defendants are properly named on the basis of their outstanding liability to the Class Members for whom Plaintiff seeks to represent.

23.    At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

24.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs

and Class Members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25.     Plaintiff brings claims for relief as a collective action pursuant to FLSA §16(b), 29

U.S.C. § 216(b), on behalf of all current and former non-exempt front-of-house and back-of-house

employees (including, but not limited to, cooks, food preparers, dishwashers, porters, hostesses,

bussers, food runners, bartenders, barbacks, and waiters, among others) employed by Defendants

on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective

Plaintiffs").

26.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs have been

similarly situated, have had substantially similar job requirements and pay provisions, and have

been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices,

procedures, protocols, routines, and rules, all of which have culminated in a willful failure and

refusal to pay Plaintiff and FLSA Collective Plaintiffs (i) their proper wages, including overtime,

due to timeshaving, and (ii) their proper wages, including overtime, due to improper rounding.

Further, with respect to tipped employees, Defendants illegally retained gratuities and improperly

distributed tips to invalid tip pool members, and were not entitled to take any tip credits under the

FLSA, or to compensate Plaintiff and FLSA Collective Plaintiffs at a sub-minimum wage hourly

rate, because they failed to satisfy all statutory requirements for taking a tip credit.

27.     Plaintiff's claims stated herein are essentially the same as those of the other FLSA

Collective Plaintiffs.

28.     The claims for relief are properly brought under and maintained as an opt-in

collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs

are readily ascertainable. For purposes of notice and other purposes related to this action, their

names and addresses are readily available from the Defendants. Notice can be provided to FLSA

Collective Plaintiffs via first class mail to the last address known to Defendants.

**MULTI-STATE RULE 23 CLASS ALLEGATIONS**

**NEW YORK AND NEW JERSEY**

29.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure

("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt front-of-house and back-of-

house employees (including, but not limited to, cooks, food preparers, dishwashers, porters,

hostesses, bussers, food runners, bartenders, barbacks, and waiters, among others) employed by

Defendants in the States of New York or New Jersey on or after the date that is six (6) years before

the filing of the Complaint in this case (the "Class Members" or "Class").

30.     The Class Members are readily ascertainable. The number and identity of the Class

Members are determinable from the records of Defendants. The hours assigned and worked, the

position held, and rates of pay for each Class Member are also determinable from Defendants'

records. For purposes of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided by means permissible under

F.R.C.P. 23.

31.     The proposed Class is so numerous that a joinder of all members is impracticable,

and the disposition of their claims as a class will benefit the parties and the Court. Although the

precise number of such persons is unknown, the facts on which the calculation of that number are

presently within the sole control of Defendants, there is no doubt that there are more than forty

(40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped

Subclass Members" or "Tipped Subclass") who also number more than forty (40) members.

Plaintiff is a member of the Class and the Tipped Subclass.

32.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, including overtime, due to timeshaving, and (ii) failing to pay proper wages due to improper rounding.

33.     Further, the Class includes employees of Defendants who were employed in the States of New York and New Jersey, who all had their rights violated similarly by Defendants in jurisdictions covered under sufficiently similar laws which award similar penalties, and are therefore fit for suitable management and are owed similar damages. To the extent deemed necessary by the Court, Plaintiff may designate additional subclasses for each of the States where Defendants have employees.

34.     With regards to the Class Members employed in the State of New York, Defendants also (i) failed to provide proper wage statements to them per requirements of the NYLL; and (ii) failed to properly provide wage notices to them, at their date of hiring and annually, per requirements of the NYLL.

35.     With regards to the Class Members employed in the State of New Jersey, Defendants also (i) failed to provide proper wage statements to them per requirements of the NJWPL; and (ii) failed to properly provide wage notices to them, at their date of hiring and at any changes in pay rates or paydays thereafter, per requirements of the NJWPL.

36.     With regard to the Tipped Subclass, Defendants also failed to pay the proper minimum wage because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under the NYLL and the NJWHL. Plaintiff and the other Tipped Subclass Members all suffered from Defendants' utilization of an invalid tip credit because

Defendants: (i) failed to properly provide written tip credit notice at hiring; (ii) claimed tip credit for all hours worked despite requiring tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of their total hours worked during a given shift each workweek; (iii) claimed tip credit for all hours worked despite requiring tipped employees to engage in non-tipped duties for continuous periods of time exceeding 30 minutes; (iv) implemented an invalid tip pooling scheme whereby managers and non-tipped employees participated; (v) illegally retained tips; (vi) failed to accurately keep track of daily tips earned and maintain records thereof; and (vii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period.

37. Defendants' corporate-wide policies and practices affected all Class Members in New York and New Jersey similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

38. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and who have previously represented plaintiffs in wage and hour cases.

39. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries, and damages suffered by each individual Class Members are small, in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress their wrongs. Important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications with respect to individual Class Members, establishing incompatible standards of conduct for Defendant, resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

40.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

41.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff under New York law, and Class Members within the meaning of New York law or New Jersey law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay to Plaintiff and the Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates;

e) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked;

f) Whether Defendants properly provided written notice to all tipped employees, in their native language, that Defendants were taking a tip credit;

g) Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

h) Whether Defendants instituted an invalid tip pool whereby managers and non-tipped employees participated;

i) Whether Defendants unlawfully retained tips from Plaintiff and Class Members;

j) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

k) Whether Defendants caused tipped employees to engage in non-tipped duties for continuous periods of time exceeding 30 minutes;

l) Whether Defendants improperly rounded down the hours of Plaintiff and Class Members;

m) Whether Defendants failed to pay call-in premiums to Plaintiff and Class Members;

n) Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under the NYLL, the NJWHL, and applicable state laws;

o) Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all non-exempt employees, in their native language, per requirements of the NYLL; and

p) Whether Defendants provided proper wage and hour notice, at date of hiring and at any changes in pay rates or paydays, per requirements of the NJWPL.

## **STATEMENT OF FACTS**

42.    In or around October, 2021, Plaintiff GUIDO VALLEJO was hired to work as a Busboy at Defendants' "Scalini Fedeli" located at 165 Duane St, New York, NY 10013. Plaintiff left employment with Defendants in or around May, 2023.

43.    Throughout his employment, Plaintiff was compensated at the prevailing tipped credit minimum hourly wage rate of ten dollars ($10.00) per hour.

44.    Throughout his employment, Plaintiff worked three (3) to five (5) days per week, as needed. He was scheduled to start at 5:00 p.m. and would finish between 11:00 p.m. and 1:00 a.m. Plaintiff worked shifts ranging from six (6) hours to eight (8) hours. Plaintiff's schedule ranged from eighteen (18) to forty (40) hours per week.

45.     Plaintiff never clocked in or out on a timeclock machine as Defendants did not utilize one. Instead, Defendants required Plaintiff to handwrite his hours worked on a timesheet. However, Defendants required Plaintiff to always round his clock in and out times to the nearest hour. Defendants rounding was mostly in their favor, and in detriment to Plaintiff. FLSA Collective Plaintiffs and Class Members were similarly unable to digitally record their clock in and out times, and were instead required by Defendants to handwrite their clock in and out times on a timesheet, rounded to the nearest hour.

46.     Every day, Plaintiff was required by Defendants to arrive fifteen (15) minutes before the start of his scheduled shift, to perform extra work. However, due to Defendants' time recording and rounding policies described above, Plaintiff was never compensated for this time. Defendants therefore created a paradoxical and unlawful system where Plaintiff must come in fifteen minutes early at 4:45 p.m. every day, but, at the same time, is only permitted to write down 5:00 p.m. as his start time on Defendants' timesheet. FLSA Collective Plaintiffs and Class Members were similarly required to arrive to work fifteen (15) minutes before their scheduled start times every day and were therefore similarly timeshaved and improperly rounded fifteen minutes of work every day.

47.     Further, Plaintiff does not have a set finish time, and leaves whenever all closing duties are completed. If Plaintiff finishes work up to 30 minutes after the nearest hour, he would be required by Defendants to round his handwritten clock out time down to the nearest hour. As a result, Plaintiff suffered from further timeshaving and improper rounding for the ends of his shifts.

48.     Defendants' collective timeshaving and improper rounding policy can be identified from Plaintiff's paystubs, where his hours worked are always recorded on exact hours at the zero minute. *See* **Exhibit M**.

21

49.     Approximately three times throughout his employment, Plaintiff was sent home by Defendants immediately upon Plaintiff's arrival to his scheduled shift, due to slow business. However, Defendants never paid Plaintiff his call-in premiums for four (4) hours of work at the prevailing minimum wage. Class Members were similarly sent home by Defendants before completing four (4) hours of work, without Defendants compensating them their call-in premiums.

50.     Throughout his employment, Plaintiff was paid at the prevailing tip credit minimum wage. However, Defendants were not entitled to claim any tip credit allowance from Plaintiff under the FLSA or NYLL because Defendants: (i) failed to provide proper notice that a tip credit was being claimed, (ii) failed to record the tip credit allowance taken on periodic wage statements given to Plaintiff, (iii) implemented an invalid tip-pooling scheme whereby managers and other non-tipped employees are included in the tip pool, and (iv) retained Plaintiff's tips. FLSA Collective Plaintiffs and Tipped Subclass Members were similarly improperly paid at the prevailing tip credit minimum wages for the above reasons.

51.     As a result of Defendants' invalid tip-pooling scheme described above, Defendants' retained portions of Plaintiff's tips to improperly distribute them to Defendants' non-tipped employees and managers who cannot lawfully receive tips. FLSA Collective Plaintiffs and Tipped Subclass Members similarly had portions of their tips retained by Defendants so Defendants could improperly distribute them to Defendants' non-tipped employees and managers.

52.     Managers at Defendants' Restaurants do not serve customers and improperly received tips from Defendants' tip pools.

53.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL and the NJWPL. Defendants failed

to reflect the actual number of hours worked and also failed to provide Plaintiff and Class Members with proper pay stubs reflecting the tip credits claimed for each pay period.

54.    In failing to provide proper wage statements and notices to Plaintiff and Class members, as required under the Wage Theft Protection Act ("WTPA"), Defendants have generated a concrete harm to an interest identified by the New York State legislature. Defendants' failure to provide these documents frustrates New York's objective of, and Plaintiff's interest in, ensuring that employees receive all wages owed. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting the WTPA's wage notice and wage statement provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.

55.    Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly.

56.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members by weakening their ability to contest the sufficiency of Defendants' wage payments to them.

57.    For example, Plaintiff has alleged that he performed work for which he was not compensated properly. This means he has alleged that the amount of wages and tips listed on the wage statements he received from Defendants were inaccurate, having understated the amount of wages and tips Plaintiff actually deserved. Withholding *accurate* wage statements, therefore, allowed Defendants to misrepresent themselves as having paid Plaintiff and other employees all wages due when Defendants had not, in fact, done that.

58.     Had the wage statements accurately represented Plaintiff's actual wages and tips earned, they would have revealed a clear, unambiguous, and indisputable discrepancy between the amount of tips that Plaintiff earned and the rate of hourly pay for which he was paid—thus providing Plaintiff with incontrovertible proof of Defendants' FLSA and NYLL violations. Such proof would have permitted Plaintiff and other similarly wronged employees to readily prevail on a motion for summary judgment early in the litigation, without the need to conduct much discovery, since accurate wage statements would have effectively constituted a written admission by Defendants of their wrongdoing.

59.     This legal leverage alone might well have incentivized Defendants to make Plaintiff and other employees whole—in order to avert what would be a hopelessly uphill litigation fight.

60.     Regardless of what Defendants would have done with Plaintiff in possession of such leverage, Plaintiff has described what is a certainty of a harm, not a mere risk, because it is certain that incontrovertible documentary evidence of Defendants' wage violations would have placed Defendants in a far weaker legal position and Plaintiff in a far stronger one. Plaintiff has been concretely injured because Defendants' deceptive representations on Plaintiff's wage statements have prevented this outcome.

61.     Of course, Defendants WTPA violations could not prevent Plaintiff from bringing the instant action. But there is a substantial difference between prosecuting a lawsuit based on contestable testimony and doing so based on incontestable documentary evidence provided by the defendant itself, which is what Defendants' WTPA violations deprived Plaintiff of.

62.     Defendants may retort that accurate wage statements would not have placed them in a weaker position because the wage statements they did provide were, in fact, accurate. But that

is an argument for another day, as the Court must accept Plaintiff's allegations as true at this stage of the litigation.

63.     There is no question that Plaintiff would be in a far better position than he is now had he received compliant wage statements. At worst, Plaintiff would have the means to readily prevail on a summary judgment motion, simply on the basis of documentary evidence generated by Defendants themselves. At best, Plaintiff might have avoided litigation altogether, since the threat thereof might have incentivized Defendants to just make Plaintiff whole.

64.     Because either of the foregoing outcomes would have been preferable to the status quo, Plaintiff and Class Members were concretely harmed when Defendants failed to provide them with the accurate wage statements that would have facilitated one of the preferred outcomes. The loss of an opportunity to readily prevail on a summary judgment motion with fairly little expenditure of resources is a concrete injury.

65.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members, in violation of the NYLL and the NJWPL.

66.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class Members, in violation of the NYLL and the NJWPL.

67.     Defendants knowingly and willfully operated their business with a policy of not paying the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiff, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass Members. Defendants were not entitled to claim any tip credits under the FLSA, the NYLL or the NJWHL.

68.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class Members their proper wages, including overtime, in violation of the FLSA, the NYLL and the NJWHL.

69.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class Members their proper wages, including overtime, due to timeshaving, in violation of the FLSA, the NYLL and the NJWHL.

70.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class Members, including overtime, due to improper rounding, in violation of the FLSA, the NYLL and the NJWHL.

71.     Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff and Class Members the full amount of their rightfully earned tips, due to an invalid tip pooling scheme, in violation of the FLSA, the NYLL and the NJWHL.

72.     Defendants knowingly and willfully operated their business with a policy of allowing their managers to directly retain gratuities from Plaintiff and Class Members, in violation of the FLSA, the NYLL and the NJWHL.

73.     Defendants knowingly and willfully operated their business with a policy of not providing call-in premiums to Plaintiff and Class Members employed in the State of New York for shifts worked under four (4) hours, in violation of the NYLL.

74.     Defendants knowingly and willfully operated their business with a policy of not providing call-in premiums to Class Members employed in the State of New Jersey for shifts worked under one (1) hour, in violation of the NJWHL.

75.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class Members.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

76.     Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

77.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

78.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

79.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

80.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to timeshaving.

81.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to improper rounding.

82.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff and a subclass of FLSA Collective Plaintiffs, due to an invalid tip credit. Defendants were not entitled to claim any tip credits from Plaintiff and FLSA Collective Plaintiffs under the FLSA.

83.     At all relevant times, Defendants had a policy and practice of unlawfully retaining gratuities from Plaintiff and a subclass of FLSA Collective Plaintiffs.

84.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and a subclass of FLSA Collective Plaintiffs the full amount of their rightfully earned tips due to an invalid tip pooling scheme.

85.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA, as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, when Defendants knew or should had known such was due.

86.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

87.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

88.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, unpaid wages, including overtime, due to timeshaving, unpaid wages due to invalid tip credit, unlawful tip retentions and deductions, unpaid tips from an invalid tip pooling scheme, plus an equal amount as liquidated damages.

89.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

**<u>(on behalf of Plaintiff and New York Class Members)</u>**

90.     Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

91.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

92.     At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime, in direct violation of the NYLL.

93.     At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to timeshaving, in direct violation of the NYLL.

94.     At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to improper rounding, in direct violation of the NYLL.

95.     At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to invalid tip credit, in direct violation of the NYLL. Defendants were not entitled to claim any tip credit from Plaintiff or Class Members under the NYLL.

96.     At all relevant times, Defendants had a policy and practice of unlawfully retaining gratuities from Plaintiff and Tipped Subclass Members.

97.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and Tipped Subclass Members the full amount of their rightfully earned tips due to an invalid tip pooling scheme.

98.    At all relevant times, Defendants engaged in a policy and practice of failing to pay Plaintiff and Class Members their call-in premiums, in direct violation of the NYLL.

99.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Tipped Subclass Members proper tip notices, at date of hiring and annually thereafter, as required under the NYLL.

100.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

101.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage statements, as required under the NYLL.

102.    Due to Defendants' NYLL violations, Plaintiff, Class Members and the Tipped Subclass Members are entitled to recover from Defendants their unpaid wages, including overtime, unpaid wages, including overtime, due to timeshaving, unpaid wages, including overtime, due to an invalid tip credit, tip compensation due to invalid tip pooling, unlawfully retained gratuities, unpaid tips from an invalid tip pooling scheme, damages for unreasonably delayed payments, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

**COUNT III**

**VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW**

**(brought only on behalf of Class Members employed in the State of New Jersey)**

103.    Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

104.    At all relevant times, Class Members in New Jersey were employed by the Defendants within the meaning of the New Jersey Statutes Annotated 34:11-56a1(h).

105.    At all relevant times, Defendants were employers within the meaning of New Jersey Statutes Annotated 34:11-56a1(g).

106.    At all relevant times, Class Members employed by Defendants in New Jersey were each engaged in a "restaurant occupation," wearing a "uniform" at the direction of the employer, while working in the "restaurant industry," pursuant to the New Jersey Statutes Annotated 12:56-14.1.

107.    At all relevant times, Defendants engaged in a policy and practice of not compensating Class Members in New Jersey all wages, including overtime, in direct violation of the NJWHL.

108.    At all relevant times, Defendants engaged in a policy and practice of not compensating Class Members in New Jersey all wages, including overtime, due to timeshaving, in direct violation of the NJWHL.

109.    At all relevant times, Defendants engaged in a policy and practice of not compensating Class Members in New Jersey all wages, including overtime, due to improper rounding, in direct violation of the NJWHL.

110.    At all relevant times, Defendants engaged in a policy and practice of not compensating Tipped Subclass Members in New Jersey all wages, including overtime, due to an invalid tip credit, in direct violation of the NJWHL. Defendants were not entitled to claim any tip credit from Tipped Subclass Members in New Jersey under the NJWHL.

111.    At all relevant times, Defendants had a policy and practice of unlawfully retaining gratuities from Tipped Subclass Members in New Jersey, in direct violation of the NJWHL.

112.    At all relevant times, Defendants had a policy and practice of failing to pay Tipped Subclass Members in New Jersey the full amount of their rightfully earned tips, due to an invalid tip pooling scheme, in direct violation of the NJWHL.

113.    At all relevant times, Defendants engaged in a policy and practice of failing to pay New Jersey Class Members their call-in premiums, in direct violation of the New Jersey Statutes Annotated 12:56-5.5.

114.    Defendants knowingly and willfully operated their business with a policy of not informing New Jersey Tipped Subclass Members of any required tip pooling contribution amounts, at date of hiring nor any time thereafter, as required under the New Jersey Statutes Annotated 12:56-3.5(k).

115.    Due to Defendants' NJWHL violations, New Jersey Class Members and Tipped Subclass Members are entitled to recover from Defendants their unpaid wages, including overtime, unpaid wages, including overtime, due to timeshaving, unpaid wages, including overtime, due to an invalid tip credit, tip compensation due to invalid tip pooling, unlawfully retained gratuities, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NJWHL.

## COUNT IV

## <u>VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW</u>

### <u>(brought only on behalf of Class Members employed in the State of New Jersey)</u>

116.    Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

117.    At all relevant times, Class Members in New Jersey were employed by the Defendants within the meaning of the New Jersey Statutes Annotated 34:11-4.1.

118.    At all relevant times, Defendants were employers within the meaning of New Jersey Statutes Annotated 34:11-4.1.

119.    At all relevant times, Defendants engaged in a policy and practice of not compensating Class Members in New Jersey all wages, including overtime, in direct violation of the NJWPL.

120.    At all relevant times, Defendants engaged in a policy and practice of not compensating Class Members in New Jersey all wages, including overtime due to timeshaving, in direct violation of the NJWPL.

121.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under the NJWPL, N.J. Stat. § 34:11-4.6.

122.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices at the time of hiring, after change in rate of pay, and/or after change in regular payday designated by Defendants, as required under the NJWPL, N.J. Stat. § 34:11-4.2.

123.    Due to Defendants' NJWPL violations, New Jersey Class Members are entitled to recover from Defendants their unpaid wages, including overtime, unpaid wages, including overtime, due to timeshaving, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NJWPL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and the Class, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NJWHL and the NJWPL;

b.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.      An award of unpaid wages, including overtime, due to timeshaving, due under the FLSA, the NYLL, the NJWHL, and the NJWPL;

d.      An award of unpaid wages, including overtime, due to invalid tip credit deductions, due under the FLSA, the NYLL, and the NJWHL;

e.      An award of unpaid call-in premiums, due under the NYLL and the NJHWL;

f.      An award of unlawfully retained gratuities, due under the FLSA, the NYLL, and the NJWHL;

g.      An award of all tips improperly distributed to invalid tip pool members, due under the FLSA, the NYLL, and the NJWHL;

h.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

i.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

j.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NJWHL;

k.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NJWPL;

l.      An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

m.      Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n.      Designation of this action as a class action pursuant to F.R.C.P. 23;

o.      Designation of Plaintiff as Representative of the Class;

p.      Designation of Plaintiff as Representative of the Tipped Subclass; and

q.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 14, 2023

Respectfully submitted,

By:     */s/ C.K. Lee*
        C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Second Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*